FROHMAN v. MASON.

(Supreme Court, Appellate Term, First Department.   March 4, 1915.)

MASTER AND SERVANT (§ 36*)—BREACH OF CONTRACT—RIGHT OF ACTION.

 An actor, employed by plaintiff for a season of 30 weeks ending May 30th, at a salary of $700 per week and 7 per cent. of the gross receipts above a specified sum per week, received for work for plaintiff and a third person a salary of $22,650, though he was not entitled to any percentage of gross receipts. He was also permitted to continue in the service for nearly an additional month, receiving the weekly salary. *Held*, that the actor could not recover damages on the theory that he was furnished with only 28 weeks of employment, instead of 30, during the season ending May 30th.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 12, 42; Dec. Dig. § 36.*]

Appeal from City Court of New York, Special Term.

Action by Charles Frohman against John Mason.   From an order setting aside a verdict for defendant, and granting a new trial, he appeals.   Affirmed.

Argued February term, 1915, before GUY, PENDLETON, and SHEARN, JJ.

House, Grossman & Vorhaus, of New York City (Louis J. Vorhaus, of New York City, of counsel), for appellant.

Dittenhoefer, Gerber & James, of New York City (David Gerber and John B. Knox, both of New York City, of counsel), for respondent.

SHEARN, J.   Action on a promissory note.   Defendant counterclaims for breach of an agreement whereby plaintiff engaged defendant as an actor for the theatrical seasons of 1912–13 and 1913–14, for at least 30 weeks during each season, at a salary of $700 per week and 7 per cent. of the gross receipts above $7,000 per week, alleging that plaintiff furnished him with only 28 weeks' employment during the theatrical season of 1913–14.

Defendant began the 1913–14 season for plaintiff on September 29th in a play called "Indian Summer" and continued therein for six weeks, receiving $700 per week.   No percentage was earned.   The play was a failure, and about 10 days after it closed, according to defendant's version, which for the purpose of this decision is accepted, plaintiff's general manager informed defendant that plaintiff had an offer from another theatrical manager, Mr. A. H. Woods, to put defendant in a play called "The Guilty Man," and asked defendant if he would agree to this.   Defendant stated that he would agree, provided his contract with the plaintiff continued in force and should not be considered as transferred, and that he should be deemed to be playing under his contract with the plaintiff.   Plaintiff's general manager agreed to this, and on November 20th Mr. Woods wrote to plaintiff's general manager;

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"I am perfectly agreeable to engage Mr. Mason for the leading part for the play entitled 'The Guilty Man' under the terms and conditions of your contract, for a period of not less than four weeks, to open not later than December 29, 1913."

"The Guilty Man" was never produced, but Mr. Woods paid the defendant $2,800 for the four weeks guaranteed. Shortly after December 29th Mr. Woods asked the defendant to take part in the play that he intended to produce, called "The Yellow Ticket." Defendant agreed, provided Mr. Woods would carry out the contract that existed between the plaintiff and the defendant; that is, pay $700 per week and 7 per cent. of the gross receipts above $7,000. Mr. Woods refused to pay the 7 per cent., and an arrangement was concluded to pay the defendant $700 per week, and in addition, in lieu of the percentage, the lump sum of $1,700. The defendant did not communicate this arrangement to the plaintiff. The defendant began to play in "The Yellow Ticket" on January 5, 1914, and played in it continuously until June 27, 1914, receiving from Mr. Woods, in addition to the bonus of $1,700, the sum of $775 a week. Although defendant receipted for these $775 weekly payments as salary, $75 of each week's payment was for the salary of defendant's manager, and may, for the purpose of this decision, be disregarded.

Defendant claims that, although he continued playing in "The Yellow Ticket" until June 27, 1914, the theatrical season referred to in and contemplated by his contract with the plaintiff came to a close on the 30th of May, 1914. If the defendant had played for the plaintiff for the 30 weeks of the 1913–14 season, the total amount that the plaintiff would have been obligated to pay the defendant would have been $21,000; no bonus having been either earned or guaranteed. It is to be borne in mind that there is no claim that the plaintiff discharged the defendant, or violated his contract in any respect, except that he furnished the defendant with 28 weeks of employment, instead of 30 weeks.

Defendant's interest in having plaintiff perform his obligation to furnish him with 30 weeks' employment during the season at $700 a week lay in defendant's getting $21,000 therefor, which was all that he could get from plaintiff's performance of that obligation. Assuming that, as contended for by defendant, the contract was not transferred to Woods, but that the plaintiff continued liable thereon primarily, and not merely as surety, and also assuming that the theatrical season ended on May 30, 1914, the undisputed evidence shows that defendant received during that period the sum of $22,650. Obviously, if this sum was received under the contract with the plaintiff, no loss was sustained by the defendant under the contract. If, on the other hand, this sum of $22,650 was received by the defendant under some other contract, namely, a new contract with Woods, in which defendant accepted $1,700 in lieu of the 7 per cent. of the gross receipts, the plaintiff was released because of this material change in the contract, made without the consent of the plaintiff.

Suppose that, when the plaintiff's contract still had 20 weeks to run at $700 a week, Mr. Woods had agreed to pay defendant $800

a week, and did pay this for 18 weeks ending May 30th. Defendant would have missed 2 weeks of "employment," but would have received $400 more salary; the difference between 18 weeks at $800 a week and 20 weeks at $700 a week. Obviously he could not claim to have been damaged because he was provided with 18 weeks' employment at $800, instead of 20 at $700. Here the additional com· pensation was included in a bonus of $1,700. Defendant insists that this should not be reckoned in determining whether he was damaged by being employed 2 weeks less than agreed, because it was in lieu of the 7 per cent. of gross profits provided for in the original contract. But the 7 per cent. was never earned, because there were no profits. Whether there would have been any profits in some other play or plays in which defendant might have been employed by plaintiff is purely speculative. There being no complaint that opportunity to earn the possible 7 per cent. was not afforded, and there having been no 7 per cent. earned, the extra payment of $1,700 made to defendant by Mr. Woods was merely additional compensation over and above the $700 a week stipulated in the original contract, and conclusively establishes that the defendant sustained no damage, even assuming that the season contracted for ended May 30th.

Furthermore, the assumption that, although the production of "The Yellow Ticket" ran right on continuously until June 27th, the defendant could arbitrarily fix on May 30th as the date on which the theatrical season of 1913–14 ended, is a fantastic one. The theatrical season referred to in the contract undoubtedly lasted, and was intended to last, as long as the productions in which the defendant was engaged continued. Owing to the success of "The Yellow Ticket," the theatrical season of 1913–14, so far as this defendant was concerned, was longer than usual, and ran nearly through the month of June. Therefore defendant was furnished with more than 30 weeks' employment during the season, and in addition received the bonus of $1,700, although under the contract with the plaintiff no bonus was earned or due him, because of the failure of the play in which he was engaged at the beginning of the season.

But it is unnecessary to enter upon this phase of the matter, for, assuming the facts as contended for by the defendant, no ground whatever exists for recovery against the plaintiff herein. A verdict should have been directed in favor of the plaintiff. While grounds assigned by the trial court for setting aside the verdict were not the compelling ones, plaintiff was entitled to have the verdict set aside, and the order is therefore affirmed, with costs.

Order affirmed, with costs. All concur.